UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD RAY BOWCUT,<br><br>Plaintiff,<br><br>v.<br><br>VASUKI DARAM, et al.,<br><br>Defendants. | No. 2:21-cv-00736 SCR P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Presently before the court is defendants' motion for summary judgment. (ECF No. 47.) For the reasons set forth below, the undersigned recommends that defendants' motion be granted. The undersigned further orders the Clerk of the Court to correct the docket to reflect the proper spelling of plaintiff's last name, "Bowcutt." (See ECF No. 38.)

**PROCEDURAL HISTORY**

This case is proceeding on plaintiff's complaint filed April 23, 2021. (ECF No. 1.) On screening, the previously assigned magistrate judge found plaintiff stated a cognizable claim of deliberate indifference to a serious medical need under the Eighth Amendment against defendants Daram, Vaughn, and Gates. (ECF No. 8.) The defendants filed an answer to the complaint on April 25, 2022. (ECF No. 24.)

////

Defendants filed the present motion for summary judgment on November 14, 2023. (ECF No. 47.) Plaintiff filed an opposition on August 13, 2024. (ECF No. 66.) Defendants did not file a reply.

I. **Allegations in the Complaint**

The complaint states that, at all relevant times, plaintiff was an inmate at Mule Creek State Prison ("MCSP"). (ECF No. 1 at 1.) Plaintiff names as defendants Vasuki Daram, W. Vaughn, and S. Gates. (Id.)

Plaintiff alleges he had hernia surgery on October 20, 2019. (ECF No. 1 at 3.) Following the surgery, surgeon Jonathan Lu documented that "he did not close the internal ring of the hernia." (Id.) On October 28, 2019, Nurse Practitioner Ketsada Pairot noted that plaintiff's right colon had "slipped under the mesh bag into the unclosed ring." (Id.) This caused plaintiff to experience "acute stabbing pain in his abdomen." (Id.) A CT scan was conducted on August 5, 2020, which showed that plaintiff had a "residual hernia along with an aneurysm." (Id.) Medical literature purportedly states that in such cases "the presence of pain in abdominal aneurysm usually precedes rupture" and abdominal pain in such cases requires "urgent referral for treatment" due to the potential for a rupture to be lethal. (Id.)

Plaintiff claims that his primary care physician, defendant Daram, will not take action to treat plaintiff's abdominal aneurysm despite plaintiff's ongoing pain and the risks it presents to his health. (ECF No. 1 at 3.) Defendants Vaughn and Gates "signed off" on plaintiff's first and last level administrative appeals, respectively, of defendant Daram's decision. (Id.) Plaintiff claims that defendants Vaughn and Gates denied plaintiff's appeals and refused to provide plaintiff with treatment for his medical condition. (Id.) Plaintiff seeks an order for immediate treatment for his condition as well as $95,000 in damages. (Id. at 6.)

**MOTION FOR SUMMARY JUDGMENT**

I. **Defendants' Motion**

Defendants primarily argue that this case presents a difference of opinion between a prisoner and his medical providers concerning the appropriate course of treatment that does not give rise to an Eighth Amendment claim. Defendant Dr. Daram argues that she provided regular

2

care for plaintiff and followed the proper course of treatment for a patient with his symptoms. (See ECF No. 47-1 at 9-10.) Defendant Dr. Vaughn argues he reviewed plaintiff's care and found it to be appropriate. (Id. at 10.) Defendant Gates argues she is not a health care professional, was not involved in plaintiff's care, and was not aware of his grievance until this litigation. (Id. at 11.) All defendants argue in the alternative that they are entitled to qualified immunity. (Id. at 11-13.)

Along with their motion for summary judgment, defendants simultaneously served plaintiff with a notice, known as a "Rand warning," describing the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 47-2); see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

**II.     Plaintiff's Response**

At the outset, the court notes that plaintiff has not fully complied with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." As required by Local Rule 260(b), plaintiff reproduced the itemized facts in defendants' Statement of Undisputed Facts and identified which facts are admitted and which are disputed. (See Plaintiff's Opposition, ECF No. 66 at 1-5.) Plaintiff's filing, however, fails to cite to specific portions of the record to support his denials or otherwise explain his disagreements. Plaintiff also reproduced defendants' memorandum and points of authorities in opposition with handwritten edits and denials to signal his disagreement. The handwritten denials, however, do not cite to the record. (ECF No. 66 at 6-19.) Plaintiff did not submit any evidence with his opposition.

"[A] district court is not required to comb the record to find some reason to deny a motion for summary judgment." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotations omitted). Further, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally

3

1  motion papers and pleadings filed by pro se inmates and should avoid applying summary
2  judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The
3  unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are
4  subject to the hardships "detention necessarily imposes upon a litigant," such as "limited access to
5  legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th
6  Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate
7  litigants, therefore, should not be held to a standard of "strict literalness" with respect to the
8  requirements of the summary judgment rule. (Id.) (citation omitted).
9       Accordingly, the court considers the record before it in its entirety despite plaintiff's
10 failure to be in strict compliance with the applicable rules. See Adv. Comm. Note to 2010
11 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some
12 examination of the record before granting summary judgment against a pro se litigant.").
13 However, the court will only consider those assertions in the opposition which have evidentiary
14 support in the record. A party's mere claim that a matter is "disputed" does not suffice to dispute
15 a fact that is supported by competent evidence. See Coverdell v. Dep't of Soc. & Health Servs.,
16 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately
17 oppose competent evidence presented in a motion for summary judgment); Burch v. Regents of
18 Univ. of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations
19 based on speculation or improper legal conclusions, or argumentative statements, are not facts
20 and likewise will not be considered on a motion for summary judgment" (emphasis omitted)).
21      In his opposition, plaintiff generally disputes that defendants' treatment of his aneurysm
22 was medically appropriate under the circumstances. For example, plaintiff writes that
23 defendants' decision to wait forty days for a follow-up after his appointment on May 21, 2021,
24 was "too long for life-threatening" conditions. (ECF No. 66 at 3.)
25 ////
26 ////
27 ////
28 ////

III.    **Material Facts**[1]

**A. Dr. Daram's Treatment of Plaintiff Through August 2020**

Dr. Daram first became involved in plaintiff's medical care on June 15, 2020. Plaintiff, born 1952, was scheduled for a routine chronic care visit. But due to the Covid-19 pandemic and efforts to reduce exposure to patients and staff, Daram reviewed plaintiff's chart instead. (Defendants' Statement of Undisputed Facts ("SUF") 1, ECF No. 47-3; Declaration of Daram ("Daram Decl.") ¶ 3 and Exh. A, ECF No. 47-4.) Dr. Daram noted plaintiff had undergone right inguinal hernia surgery on October 23, 2019. Based on the available information, Dr. Daram concluded that plaintiff's medical conditions were stable, did not require immediate intervention, and did not pose a risk if his examination was delayed for several weeks. (Id.)

Dr. Daram examined plaintiff on June 24, 2020. Plaintiff complained of right-side groin pain that had been intermittently present for a month and lasted about 30 minutes at a time. (SUF 2; Daram Decl. ¶ 5 and Exh. B.) Dr. Daram found significant pain with palpation of the right groin area and diagnosed plaintiff with right groin pain of an unclear etiology. Dr. Daram concluded it was prudent to conduct a CT scan of plaintiff's pelvis based on plaintiff's past hernia repair and acute pain with no history of trauma. (Id.) A CT scan is a common and accurate technique for diagnosing acute groin and abdominal pain. (SUF 3; Daram Decl. ¶ 6.) Dr. Daram did not see any medical indication to send plaintiff out to the hospital on an urgent basis since he had been experiencing the pain for a month and it has not worsened.[2] (SUF 4; Daram Decl. ¶ 7 and Exh. B.)

Plaintiff underwent the CT scan on August 5, 2020. The findings were "postsurgical changes of the right inguinal hernia repair" without evident complication. There was also a right common iliac artery aneurysm that was 2.2 cm in diameter.[3] (SUF 5; Declaration of Stevenson

---

[1] The following are undisputed unless otherwise noted.
[2] Plaintiff disputes SUF 4 and cites broadly to Exhibit B of the Daram Decl. (ECF No. 66 at 2.) The court finds no discrepancies between SUF 4 and Exhibit B and treats SUF 4 as undisputed. It appears plaintiff is disputing Dr. Daram's decision not to hospitalize him, not the facts.
[3] Plaintiff disputes the CT scan findings in defendants' SUF 5 and cites broadly to Exhibit A of the Stevenson Declaration. (ECF No. 66 at 2.) The court has carefully reviewed Exhibit A, which contains the CT scan results (see ECF No. 47-6 at 5-6) and finds SUF 5 to be supported by

("Stevenson Decl."), Exh. A, ECF No. 47-5.)  The common iliac artery is about 4 cm long and more than 1 cm in diameter.  It begins as a branch of the aorta at the level of the 4th lumbar vertebra below the arteries that supply blood to the kidneys.  (SUF 6; Daram Decl. ¶ 12.)

### B. Plaintiff's Healthcare Grievance

Plaintiff submitted a healthcare grievance on August 21, 2020, complaining of pain following hernia surgery.  (SUF 18; Declaration of Vaughn ("Vaughn Decl.") ¶ 4 and Exh. A, ECF No. 47-7.)  Dr. Vaughn, MCSP's Chief Physician and Surgeon, prepared an institutional response on October 30, 2020.  In preparing the response, Dr. Vaughn reviewed plaintiff's grievance and medical records.  Based on this review, Dr. Vaughn noted that plaintiff had undergone a CT scan on June 24, 2020, which had indicated no new issues related to his hernia.[4]  (SUF 18; Vaughn Decl., Exh. A at 8-9.)  Dr. Vaughn also informed plaintiff that pain medication, including ibuprofen and naproxen, were available to him through the prison's canteen.  Lastly, Dr. Vaughn noted that plaintiff was receiving ongoing primary care provider evaluations and treatment for his medical concerns, as determined to be medically necessary.  (Id.)  Based on his review of plaintiff's grievance and the medical records, Dr. Vaughn concluded that plaintiff was receiving appropriate care and there was no basis to intervene in plaintiff's care.[5]  (SUF 19; Vaughn Decl. ¶ 5 and Exh. A.)

The Health Care Correspondent and Appeals Branch prepared a headquarters level response to plaintiff's grievance dated March 3, 2021.  (SUF 20; Declaration of Gates ("Gates Decl."), Exh. A, ECF No. 47-5.)  The headquarters level response affirmed Dr. Vaughn's denial of plaintiff's grievance.  (Gates Decl., Exh. A.)

Defendant Gates holds the position of Chief of the Health Care Correspondence and Appeals Branch.  (SUF 21; Gates Decl. ¶ 1.)  Gates' name appears on the signature line of the

---

the evidence. As such, the court treats SUF 5 as undisputed.  See Coverdell, 834 F.2d at 762.

[4] As noted above, other record information indicates that the CT scan was recommended on June 24, 2020 but not done until August 5, 2020. (SUF 5; Stevenson Decl., Exh. A, ECF No. 47-5.)

[5] Plaintiff disputes SUF 19 but does not cite any exhibits or other portions of the record. (ECF No. 66 at 5.)  It appears to the court that plaintiff is disputing Vaughn's denial of his grievance, not the facts presented in SUF 19 itself.  Therefore, as with SUFs 4 and 5, supra n.2 and n.3, respectively, the court will treat SUF 19 as an undisputed fact.  See Coverdell, 834 F.2d at 762.

headquarters level response to plaintiff's grievance dated March 3, 2021.  (SUF 22; Gates Decl. ¶ 4.)  However, Gates has delegated to staff the authority to sign in her place and did not sign plaintiff's headquarters level response.  (SUFs 22 and 23; Gates Decl. ¶¶ 4-5.)  Gates was not involved in reviewing and responding to plaintiff's grievance and had no knowledge of plaintiff's grievance prior to his filing of this lawsuit.  (SUF 23; Gates Decl. ¶ 5.)

### C. Dr. Daram's Treatment of Plaintiff Post Grievance

Plaintiff was scheduled to be seen by a doctor on January 12, 2021, for a routine chronic care examination.  However, the prison was on lockdown due to extensive COVID-19 infections.  Instead, a Dr. Aung reviewed plaintiff's chart, including the results of the CT scan.  Dr. Aung diagnosed plaintiff with a right inguinal hernia that had been surgically repaired. A routine follow-up was ordered for 180 days later.  (SUF 7; Stevenson Decl., Exh. A.)

Dr. Daram next examined plaintiff on May 19, 2021.  Plaintiff complained of a "poking pain" in his right groin every time he had a bowel movement.  (SUF 8; Daram Decl. ¶ 9 and Exh. C.)  Groin pain during bowel movements is a common condition after hernia surgery because the scar tissue is stretched.[6]  (Id.)  During the physical examination, Dr. Daram found that there was slight tenderness to palpation in the right lower inguinal area.  Dr. Daram diagnosed plaintiff with right inguinal pain and right groin pain.  Dr. Daram believed that this was most likely due to a possible recurrence of the hernia.  (SUF 9; Daram Decl. ¶ 9 and Exh. C.)  Dr. Daram diagnosed an aortic aneurysm that was 2.2 cm in diameter based on the previous CT scan and ordered another CT scan to evaluate these conditions.  She also ordered a follow-up examination to take place in 40 days.[7]  (SUF 10; Daram Decl. ¶ 13 and Exh. C.)

---

[6] Plaintiff disputes SUF 8 and cites Exhibit C of the Daram Decl.  (ECF No. 66 at 2-3.)  It is not clear which part of SUF 8 plaintiff disputes.  To the extent he disputes SUF 8's characterization of his pain, his dispute is inconsistent with his express agreement with SUF 9 ("Undisputed True," ECF No. 66 at 3), which describes his pain in a similar way and cites to Exhibit C.

[7] Plaintiff disputes SUF 10, writing "40 days is too long for life threatening [conditions]." (ECF No. 66 at 3.)  The court interprets this as an argument, not a factual denial, and treats SUF 10 as undisputed.  See Burnell v. Gonzalez, No. 1:10-cv-00049-LJO-BAM, 2012 WL 3276967, at *2 (E.D. Cal. Aug. 9, 2012) ("Arguments or contentions set forth in an unverified responding brief … do not constitute evidence." (citing Coverdell, 834 F.2d at 762)), report and recommendation adopted, No. 1:10-CV-00049-LJO-BAM, 2012 WL 4468738 (E.D. Cal. Sept. 27, 2012).

7

An aortic aneurysm is an enlargement of the aorta to greater than 1.5 times normal size. (SUF 11; Daram Decl. ¶ 14.) They are common, especially in men over 65, and usually cause no symptoms except when dissected, meaning there is bleeding between the layers of the aorta. An aortic aneurysm does not cause groin pain. If an aortic aneurysm causes pain, it is typically in the patient's back. (SUF 12; Daram Decl. ¶ 15.)

Medical imaging is necessary to confirm the aortic aneurysm diagnosis and to determine the extent of the aneurysm. (SUF 11; Daram Decl. ¶ 14.) The determination of surgical intervention is determined on a per-case basis. The diameter of the aneurysm and its rate of growth are important factors in determining overall treatment. (Id.) A large and rapidly expanding aortic aneurysm should be repaired, as it has a greater chance of rupture. Surgical repairs are often suggested for an aneurysm with a diameter greater than 5 or 5.5 cm. Smaller and slower growing aortic aneurysms may be followed by routine diagnostic testing, such as by CT scans. (Id.)

Plaintiff was scheduled to have a follow-up with Dr. Daram on June 29, 2021. However, Dr. Daram found no medical indication for a face-to-face visit, which was still being limited due to the pandemic. (SUF 13; Daram Decl. ¶ 17 and Exh. D.) Dr. Daram then examined plaintiff on July 22, 2021, to review the results of the CT scan conducted on June 23, 2021. (SUF 14; Daram Decl. ¶ 17 and Exh. E.) Based on the CT results, Dr. Daram diagnosed plaintiff with a hernia of the abdominal wall that was stable. (Id.) She also diagnosed an infrarenal abdominal aneurysm measuring 3.6 cm that had not appeared on the August 2020 CT scan. She determined the appropriate course was to monitor it.[8] (Id.) Dr. Daram also diagnosed the iliac artery aneurysm, which was 2.2 cm on the CT scan in August 2020, but was not discussed on the latest CT scan. Dr. Daram determined it would also be appropriate to monitor this aneurysm. (Id.) Finally, Dr. Daram diagnosed plaintiff with right groin pain but noted the CT scan did not show any abnormal findings in the right groin. She determined the pain was most likely from scar tissue from the

---

[8] Plaintiff disputes SUF 14 and cites Exhibit E to Daram's Declaration. (ECF No. 66 at 3-4 ("Plaintiff dispute and is a serious issue.").) The court has reviewed Exhibit E, which contains Dr. Daram's notes from the July 2021 examination, and finds no inconsistencies with SUF 14. Therefore, the court treats SUF 14 as an undisputed fact. See Coverdell, 834 F.2d at 762.

previously repaired hernia and advised plaintiff to monitor the pain and, if it got worse, to submit a sick-call slip. (Id.)

Dr. Daram next examined plaintiff on September 8, 2021. The primary purpose of this examination was to discuss his kidneys. During the examination, plaintiff denied suffering any abdominal pain. (SUF 15; Daram Decl. ¶ 21 and Exh. F.) Dr. Daram was not again involved in plaintiff's medical care. (SUF 16; Daram Decl. ¶ 21.)

## LEGAL STANDARDS

### I. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.

1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of thin air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## II.     Eighth Amendment Medical Indifference

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F.3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted). A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, as for any § 1983 claim, there must be an actual causal link between the actions of the named defendants and the alleged constitutional deprivation. See Monell v. Dep't of Soc. Services, 436 U.S. 658, 691–92 (1978); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

## DISCUSSION

### I. Eighth Amendment Medical Indifference

Defendants do not dispute that they were acting under color of state law. Nor do defendants dispute that plaintiff had a serious medical need. (ECF No. 47-1 at 9.) The court's analysis then turns solely on the deliberate indifference prong of the Eighth Amendment analysis. The court will address each defendant in turn.

**A. Defendant Daram**

Dr. Daram argues that she "acted appropriately in following a conservative course of treatment for [plaintiff's] condition and monitoring its progress." (ECF No. 47-1 at 12.) She points to her CT scan order following her first examination on June 24, 2020, and follow-up examinations of plaintiff on May 19, 2021, July 22, 2021, and September 8, 2021, as evidence she was "highly responsive to his needs." (Id. at 9-10.) Dr. Daram contends there is no basis for concluding that her course of treatment was medically unacceptable or chosen in conscious disregard of any excessive risk to plaintiff's health. (Id. at 10.)

The court first addresses whether Dr. Daram has met her initial burden of demonstrating the absence of a genuine issue of material dispute regarding her deliberate indifference. In carrying out this task, the court found the record to be underdeveloped. Dr. Daram submits only

12

progress notes and no diagnostic reports, medical slips, or other potentially material records, as well as no expert testimony. Dr. Daram's explanation for her "wait and see" approach to plaintiff's groin pain, iliac artery aneurysm, and infrarenal artery aneurysm is lacking, especially compared to her more detailed analysis of plaintiff's aortic aneurysm. (Compare Daram Decl. ¶ 19, with Daram Decl. ¶¶ 13-15.)

After careful review of the limited record, the court finds the timeline of Dr. Daram's care particularly relevant to the summary judgment analysis. Nearly a year passed between Dr. Daram's first examination of plaintiff on June 24, 2020, and her second on May 21, 2021.[9] At the May 2021 visit, Dr. Daram made an aortic aneurysm diagnosis based on the CT scan conducted on August 5, 2020, over nine months prior, and determined his groin pain was "most likely a reoccurrence of his right inguinal hernia." (SUF 9; Daram Decl., Exh. C, ECF No. 47-4 at 19.) It is unclear from the record what, if any, monitoring of plaintiff Dr. Daram did during this nearly one-year gap.

A prisoner's disagreement with a prison doctor's conservative, "wait and see" approach to his care does not itself amount to a constitutional violation. See Toguchi, 391 F.3d at 1058. "But it has been established that denying, delaying, or intentionally interfering with medical treatment can violate the constitution. At some point 'wait and see' becomes deny and delay." Stewart v. Aranas, 32 F.4th 1192, 1195 (9th Cir. 2022) (internal citations and quotations omitted). For example, in Jett, 439 F.3d at 1097-98, the Ninth Circuit denied a prison doctor's motion for summary judgment where it determined a jury could infer deliberate indifference from his over two-month delay in treating a prisoner's fractured thumb. The Court held that as the nonmoving party, the prisoner was entitled to an inference that his doctor was made aware of the serious medical need through prisoner's grievance, letter, and "continued submission of medical slips to obtain [defendant's] care." (Id.)

But here, unlike in Jett, the court does not infer Dr. Daram's conscious disregard from the delay. For one, the record shows that plaintiff did not submit the standard "Health Care Services

---

[9] Plaintiff filed this action on April 23, 2021. (ECF No. 1.)

Request," also known as a CDCR Form 7362, to put Dr. Daram on notice that her conservative approach was not working. Progress notes show that Dr. Daram reviewed one of plaintiff's 7362s on June 15, 2020, before their first visit. (Daram Decl., Exh. A, ECF No 47-4 at 8.) Then at that first visit on June 24, 2020, Dr. Daram instructed plaintiff to submit another 7362 or go "man down" if his groin symptoms worsened. (Daram Decl., Exh. B, ECF No. 47-4 at 14.) Despite Dr. Daram's instructions, the record shows plaintiff did not submit another 7362 before filing his grievance. In his grievance response dated October 30, 2020, Dr. Vaughn determined – and plaintiff does not dispute – that "there is no recent documentation that you have attempted to access health care services utilizing the approved processes for concerns related to unresolved pain [i.e., 7362s]." (Vaughn Decl., Exh. A, ECF No. 47-7 at 8.) The court found other record evidence of Dr. Daram's monitoring of plaintiff's care during this period that defendants did not raise in their motion, including plaintiff's progress note dated June 15, 2020, showing Dr. Daram ordered biannual ultrasounds (Daram Decl., Exh. B, ECF No. 47-4 at 15) and that plaintiff underwent an ultrasound (Stevenson Decl., Exh. A, ECF No. 47-6 at 5) and a blood work-up (Daram Decl., Exh. C, ECF No. 47-4 at 18) in November 2020.

Nor can the court infer from the record that Dr. Daram's delay was medically unacceptable. Directing patients to complete 7362s "complie[s] with proper procedure" and is "helpful to assist in making the proper determination as to how Plaintiff's complaint should be triaged, as compared to other inmates seeking medical attention." Jackson v. Dye, No. 1:14-cv-00222-LJO-SAB (PC), 2016 WL 3447941, at *10 (E.D. Cal. June 23, 2016), subsequently aff'd, 695 F. App'x 258 (9th Cir. 2017). Further, while plaintiff did submit a grievance in August 2020, he did so just weeks after the CT scan ordered by Dr. Daram – a scan that plaintiff does not dispute is a common and accurate technique for diagnosing acute abdominal pain. (SUF 3; see also Plaintiff's Opp., ECF No. 66 at 2.) The record also shows that Dr. Vaughn and Dr. Aung reviewed plaintiff's medical records on October 30, 2020, and January 12, 2021, respectively, and agreed with Dr. Daram's conservative approach. (See Vaughn Decl. ¶ 4, ECF No. 47-7 at 2 (concluding CT scan showed "no new issues related to [plaintiff's] hernia"); Stevenson Decl., Exh. A, ECF No. 47-6 at 4-5 (ordering follow-up appointment in 180 days).) Lastly, even with

the nearly nine-month delay in diagnosing plaintiff's aortic aneurysm, Dr. Daram has put forth sufficient evidence to show that this condition was not the source of plaintiff's groin pain and that her "monitoring" approach was medically sound. (See Daram Decl. ¶¶ 13-15.)

In sum, while perhaps raising questions regarding the objective standard of care, Dr. Daram's nearly one-year long gap in treating plaintiff's undisputed serious medical need is, by itself, insufficient to establish a violation of the Eighth Amendment. Because the record supports that Dr. Daram's conservative approach was not medically unacceptable or in conscious disregard for a risk to plaintiff's health, she has met her burden of showing the absence of a genuine issue of material dispute regarding deliberate indifference.

The burden then shifts to plaintiff to demonstrate that a genuine issue of material fact exists as to Daram's deliberate indifference. Matsushita, 475 U.S. at 586-87. As discussed in Section III, *supra*, the factual denials in plaintiff's opposition concerning Dr. Daram (SUFs 4-5, 8, 10 and 14) either lack evidentiary support or are arguments that do not constitute evidence at all. Therefore, plaintiff failed to raise any genuine issues of material fact through his opposition. Because of plaintiff's pro se status, the court then looks to the record in its entirety to identify triable issues of fact concerning Dr. Daram's deliberate indifference.

First, in his complaint plaintiff cites medical literature that purportedly states, "the presence of pain in abdominal aneurysm usually precedes rupture" and abdominal pain in such cases requires "urgent referral for treatment" due to the potential for a rupture to be lethal. (ECF No. 1 at 3). He adds in his request for relief that an "abdominal aneurysm, when presented with pain, indicates eminent rupture and death according to the above medical textbook." (Id. at 6.) Because it is verified (see id. at 6), the court accepts the complaint as an opposing affidavit for purposes of this motion. See Jones, 393 F.3d at 923. Plaintiff, however, failed to submit the study as required by Federal Rule of Civil Procedure 56(c)(1)(A). Moreover, because plaintiff is not a medical expert, his unsupported medical opinions are not sufficient evidence to defeat summary judgment. See Ricks v. Levine, No. 1-15-cv-01150-AWI-BAM-PC, 2018 WL 1243433, at *12 (E.D. Cal. Mar. 9, 2018) (holding plaintiff's unsupported medical opinion cannot show deliberate indifference under the Eighth Amendment.)

15

1    The court also looked closely at two batches of medical records plaintiff filed much earlier
2 in this action: (1) a packet of various radiology (e.g., X-ray, MRI, CT, and ultrasound) reports
3 from California Correctional Health Care Services, ECF No. 23; and (2) a packet of
4 miscellaneous medical records, including his August 2020 and June 2021 CT scan results and
5 October 2019 surgical reports, ECF No. 44. These records, however, do not create genuine issues
6 of material fact as to Dr. Daram's deliberate indifference and in fact support the inference that Dr.
7 Daram was actively monitoring his care. For example, the June 2021 results for the CT scan
8 ordered by Dr. Daram and discussed in paragraph 19 of her declaration show that she was
9 actively treating a kidney issue in addition to the abdominal conditions at issue in this action.
10 (ECF No. 23 at 9.)

11    In sum, plaintiff has failed to show a genuine issue of material fact as to Dr. Daram's
12 deliberate indifference. Accordingly, Dr. Daram is entitled to summary judgment.

### B. Defendant Vaughn

14    Defendant Dr. Vaughn provided the institutional response to plaintiff's grievance. He
15 argues that he reviewed plaintiff's care and found it to be appropriate. (ECF No. 47-1 at 10.) He
16 based his conclusion on the CT scan results dated August 5, 2020, which showed no new issues
17 related to plaintiff's hernia, and the fact plaintiff was receiving ongoing primary care provider
18 evaluations and treatment for his medical concerns and there was no basis to intervene. (Vaughn
19 Decl. ¶¶ 4-5, ECF No. 47-7 at 2.)

20    As with Dr. Daram's declaration, the court finds Dr. Vaughn's conclusory explanation for
21 his findings regarding plaintiff's appropriate care less than helpful. "In deciding whether there
22 has been deliberate indifference to an inmate's serious medical needs, we need not defer to the
23 judgment of prison doctors or administrators." Hun. Colwell v. Bannister, 763 F.3d 1060, 1066
24 (9th Cir. 2014). However, Dr. Vaughn meets his burden for the same reason as Dr. Daram – the
25 evidence shows Dr. Vaughn did not act with conscious disregard for a risk to plaintiff's health or
26 chose a medically unacceptable course of action.

27    As a prison administrator, Dr. Vaughn is liable for deliberate indifference when he
28 knowingly fails to respond to an inmate's requests for help. See Estelle, 429 U.S. at 104. This

1   theory of liability is viable when the administrator is reviewing a present need for medical care
2   and, in ignoring the need, acts in deliberate indifference to that need.  Galik v. Nangalama, No.
3   CIV. 2:09-0152-WBS-KJN, 2012 WL 469850, at *1 (E.D. Cal. Feb. 7, 2012).

4   Here, the evidence shows that plaintiff did not ask Dr. Vaughn for help or otherwise put
5   him on notice of his medical needs before filing his grievance.  There is no evidence that Dr.
6   Vaughn was involved in plaintiff's care at all; Dr. Vaughn testified that his duties are
7   administrative and "rarely provide[s] patient care." (Vaughn Decl. ¶ 1, ECF No. 47-7 at 1.)  In
8   investigating the grievance, Dr. Vaughn determined that plaintiff had not filed any 7362s despite
9   Dr. Daram's instructions to do so if he continued to have pain.  (Id. at 8.)  The evidence also
10  shows that Dr. Vaughn chose a medically acceptable course of action in denying the grievance.
11  The court, based on its own review of the CT scan results relied on by Dr. Vaughn (Stevenson
12  Decl., Exh. A, ECF No. 47-6 at 5-7), finds support for Dr. Vaughn's determination that the CT
13  scan showed no changes since plaintiff's surgery.  (Vaughn Decl. ¶ 4.)  Finally, in his grievance
14  response, Dr. Vaughn, like Dr. Daram, encourages plaintiff to use 7362s going forward for any
15  "additional health care needs[.]"  (Id. at 9.)

16  Thus, the court finds Dr. Vaughn has met his initial burden.  The burden then shifts to
17  plaintiff to rise a genuine issue of material fact.  In his opposition, plaintiff disputes SUF 19
18  regarding Dr. Vaughn's conclusion that plaintiff was receiving appropriate care. (ECF No. 66 at
19  5.)  As addressed above, *supra* n.4, this amounts to a disagreement with Dr. Vaughn's medical
20  decision, not a factual dispute.  Because plaintiff does not dispute any other facts as to Dr.
21  Vaughn in his opposition (see ECF No. 66 at 4-5) and the court identified no such genuine
22  disputes in the record, the court recommends that summary judgment be entered in Dr. Vaughn's
23  favor.

24  **C.  Defendants Gates**

25  Plaintiff filed a headquarters level appeal on November 12, 2020.  (Gates Decl., Exh. A,
26  ECF No. 47-5 at 6.)  Defendant Gates argues she was not involved in the headquarters level
27  response dated March 3, 2021, and had no knowledge of plaintiff's grievance until this lawsuit.
28  (ECF No. 47-1 at 11; Gates Decl. ¶ 5.)

17

Plaintiff does not dispute any of the facts pertaining to defendant Gates. (See ECF No. 66 at 5.) Therefore, there is no genuine dispute as to Gates' lack of knowledge of plaintiff's grievance prior to the filing of this lawsuit. Absent a showing of Gates' subjective knowledge of plaintiff's serious medical need, plaintiff cannot satisfy the Eighth Amendment deliberate indifference standard. See Farmer, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment…unless the official knows of and disregards an excessive risk to inmate health or safety."). Accordingly, the court recommends that summary judgment be entered in Gates' favor.

## II.    Qualified Immunity

Because plaintiff has failed to identify evidence that creates a triable issue of fact as to any defendants' deliberate indifference, the court declines to separately analyze the qualified immunity defense.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall randomly assign this matter to a district court judge; and

2. The Clerk of the Court shall correct the docket to reflect the correct spelling of plaintiff's last name, "Bowcutt." (See ECF No. 38.)

Further, IT IS RECOMMENDED that Defendants' motion for summary judgment (ECF No. 47) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////

////

////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 18, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE